UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

SHANNON M.,

                              Plaintiff,

        v.

COMMISSIONER OF SOCIAL
SECURITY,

                              Defendant.

NO. 2:17-CV-0382-TOR

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT

        BEFORE THE COURT are the parties' cross motions for summary

judgment.  ECF Nos. 13; 14.  These matters were submitted for consideration

without oral argument.  The Court has reviewed the administrative record and the

parties' completed briefing, and is fully informed.  For the reasons discussed

below, Plaintiff's Motion for Summary Judgment (ECF No. 13) is **DENIED**, and

Defendant's Motion for Summary Judgment (ECF No. 14) is **GRANTED**.

//

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

# JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

# STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the

record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that he or she was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R.

416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the

claimant's "residual functional capacity."  Residual functional capacity ("RFC"),

defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations (20 C.F.R. §

416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in

the past ("past relevant work").  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is

capable of performing past relevant work, the Commissioner must find that the

claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of

performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing other work in the national economy.

20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner

must also consider vocational factors such as the claimant's age, education, and

work experience.  *Id.*  If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §

416.920(g)(1).  If the claimant is not capable of adjusting to other work, the

analysis concludes with a finding that the claimant is disabled and is therefore

entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above.

*Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

**ALJ FINDINGS**

Plaintiff filed an application for Supplemental Security Income ("SSI") benefits on March 14, 2014, alleging a disability onset date of June 1, 2006. Tr. 21. The claim was denied initially and upon reconsideration. *Id.* Plaintiff requested a hearing before an ALJ, which was held on January 19, 2016. *Id.* At her hearing, Plaintiff amended the alleged onset date of her disability to March 14, 2014. *Id.* On June 24, 2016, the ALJ rendered a decision finding Plaintiff was not disabled. Tr. 35.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 14, 2014. Tr. 23. At step two, the ALJ determined that Plaintiff had the following severe impairments: "obesity, major depressive disorder, generalized anxiety disorder, borderline intellectual functioning, personality disorder, and methamphetamine abuse." *Id.* At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. Tr. 24.

1    The ALJ then concluded that Plaintiff had the RFC to perform a range of

2    light work based solely on her level III obesity.  Tr. 26.  The ALJ found that

3    Plaintiff can lift no more than 20 pounds at a time occasionally and can lift or

4    carry 10 pounds at a time frequently.  *Id.*  Plaintiff can sit, stand, and walk six

5    hours each in an eight-hour workday with normal breaks.  *Id.*  She can

6    occasionally kneel and climb ramps/stairs, but she cannot crawl, climb

7    ladders/ropes/scaffolds or work around unprotected heights.  *Id.*  The ALJ

8    determined that mentally, Plaintiff can understand, remember, and carry out

9    simple, repetitive, routine work instructions and work tasks.  *Id.*  She can have

10   brief, superficial contact with the general public.  *Id.*  She can work with, or in the

11   vicinity of, coworkers.  *Id.*  Plaintiff can handle normal supervision but no over-

12   the-shoulder or confrontational type of supervision, and she would do best in a

13   routine work setting with little or no change and no independent decision making.

14   *Id.*  The ALJ also found Plaintiff can perform her past relevant work as a motel

15   housekeeper.  Tr. 33.

16        At step five, the ALJ determined that Plaintiff is capable of making a

17   successful adjustment to other work that exists in significant numbers in the

18   national economy.  Tr. 34.  On that basis, the ALJ concluded that Plaintiff was not

19   disabled as defined in the Social Security Act.  Tr. 35.

20   //

**ISSUES**

Plaintiff raises two issues for review:

1. Whether the ALJ erred in assessing Plaintiff's credibility.

2. Whether the ALJ erred in assessing Plaintiff's RFC, posing a proper hypothetical to the vocational expert, and finding Plaintiff to be capable of performing her past relevant work at step four.

ECF No. 13 at 8. The Court evaluates each contention in turn.

**DISCUSSION**

**1. Credibility of Plaintiff**

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation and citation omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quotation and citation omitted). "The only time this standard does not apply is when there is affirmative evidence that

the claimant is malingering." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear and convincing reasons' for the rejection." *Vasquez*, 572 F.3d at 591 (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.").

In making such a determination, the ALJ may consider: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

Here, Plaintiff asserts that her credibility is bolstered by the fact that she had consistently reported to her providers that her anxiety caused panic attacks and that she did not feel like leaving home very often. ECF No. 13 at 12; Tr. 85. Plaintiff states her credibility is also supported by her participation in counseling, as well as her continued use of psychotropic medications prescribed by her primary care provider, Dr. Cox. ECF No. 13 at 12. Plaintiff argues that had the ALJ accepted her testimony, he should have found her to be disabled as it is more probable than not that she would be absent from work in excess of one day per month, which the vocational expert ("VE") indicated would eliminate all work. ECF No. 13 at 12; Tr. 103. Plaintiff concludes that the ALJ's assessment was not based upon any clear or convincing evidence. ECF No. 13 at 12.

The Commissioner counters that Plaintiff neither identifies nor challenges any of the ALJ's reasons for finding her not credible. ECF No. 14 at 3. The Commissioner argues that Plaintiff's bare assertion is insufficient to preserve a challenge to the ALJ's credibility. *Id.* at 4. On the merits, the Commissioner asserts that the ALJ discounted Plaintiff's credibility for several valid reasons, which will be discussed below. *Id.* at 4-6. The Court still considers the merits of Plaintiff's argument in spite of her conclusory statements.

The ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms that the claimant testified to are

not consistent with the medical signs and laboratory findings of record to the extent they would limit the ability to perform work related activities …." Tr. 27. The ALJ then analyzed the objective medical evidence in the record, inconsistencies in Plaintiff's testimony and conduct, Plaintiff's daily activities, and opinions from physicians. Tr. 27-31.

In regards to physical symptoms, the ALJ noted that objective findings since the amended alleged onset date have been largely unremarkable and thus inconsistent with her allegations of difficulties with lifting more than 10 pounds, standing for long periods of time, and walking for more than short distances. Tr. 27. In April and August 2015, the ALJ emphasized that the physical examinations showed normal range of motion and no tenderness of the neck or back, intact distal pulses with no edema or tenderness of the extremities, and good range of motion. Tr. 28, 646, 654. Plaintiff also had normal motor and sensory function. Tr. 28, 646, 654. She presented with back pain in September 2015, but she also reported that prescription pain medications were helpful and that she was not interested in physical therapy. Tr. 28, 634. The ALJ found that her pain was then not so severe as to cause significant deficits in terms of her overall physical functioning. Tr. 28.

In February 2016, Plaintiff complained of some pain in her heel and was noted to be walking in an unusual way, but the ALJ noted this appeared to relate to her non-severe Achilles tendinitis rather than any back pain. Tr. 28, 860-62. The

ALJ noted that more recent physical examinations from March 2016 show Plaintiff was moving about with all extremities and with no deformities or edema of the lower extremities, with no range of motion deficits appreciated, and with joints with good range of motion. Tr. 28, 880, 886, 901.

The ALJ found that Plaintiff's activities indicated that her overall physical functioning was not significantly limited. Tr. 28. At the hearing, Plaintiff testified that she was able to do household chores and use the bus or walk to get around. *Id.* She stated that she was able to leave her house in order to go to the park, a nearby river, and the local casino. *Id.* The ALJ determined that these activities indicated a largely intact ability to stand and walk, and an ability to engage in a variety of postural activities. *Id.* Yet, the ALJ still accounted for Plaintiff's subjective complaints to some extent by finding that a limited range of light work was appropriate. *Id.* The ALJ emphasized that no doctor has indicated that Plaintiff cannot work at the light level. *Id.*

In regards to Plaintiff's mental symptoms, the ALJ acknowledged that the record showed a history of mental health treatment dating to 2007, a significant history of psychiatric medications, and psychological testing results consistent with borderline intellectual functioning. Tr. 28, 310-20 (Ex. B1F), 452 (Ex. B9F), 332, 337 (Ex. B2F), 361 (Ex. B4F). Yet, the ALJ determined that objective findings related to Plaintiff's mental functioning show that, at all times within a few months

and since the amended alleged onset date, she has maintained largely intact social and cognitive functioning. Tr. 28. The ALJ explained that in May 2013, Plaintiff presented as anxious, with depressed mood, and moderately constricted affect, but this was likely due to a situational stressor given that her friend had died suddenly the night before. Tr. 28, 381. The ALJ also noted that Plaintiff's perception appeared within normal limits and she did not appear to be responding to internal stimuli, which was inconsistent with her allegations of hearing voices. Tr. 29, 384. She has acknowledged that since the amended alleged onset date, she does not hear voices anymore and that she last heard voices a few years ago. Tr. 29, 947.

In September 2014, the ALJ found that the intake assessment was largely unremarkable and showed overall intact social and cognitive functioning. Tr. 29, 992-1003 (Ex. B28F). A mental status examination in March 2015 was again largely unremarkable and showed no significant deficits in her overall mental functioning related to worsening anxiety symptoms. Tr. 29, 935, 960 (Ex. B26F). In May 2015, Plaintiff was noted to present with cuts on both of her forearms, but the results of a contemporaneous mental status evaluation was largely identical to those of the May 2013 psychological examination. The only difference between the examinations were that her abstract thought was not within normal limits, she could remember zero out of three objects after a 5 minute delay, and she had abnormal long-term memory. Tr. 29, 837, 840 (Ex. B22F). Psychiatric

assessments in August 2014 and April 2015 were unremarkable, noting Plaintiff as alert, oriented, and with normal speech, affect, mood and judgment.  Tr. 29, 623 (Ex. B13F), 646, 654 (Ex. B14F).

The ALJ also found that the record was inconsistent with Plaintiff's claimed difficulty in leaving the house.  Tr. 30.  While the record shows several instances in which Plaintiff has missed behavioral health appointments, the record also shows that she was recently able to re-enroll in mental health treatment in March 2016 despite her testimony that she presently experiences severe panic attacks.  Tr. 30, 932-34, 942-43, 953 (Ex. B26F).  Although Plaintiff indicated some issues with paranoia, a contemporaneous mental status examination was again largely unremarkable.  Tr. 30, 950.

Mental status examinations in April 2016 show that although Plaintiff reported feeling anxious and stressed, she still had overall intact mental functioning in that she had appropriate psychomotor behavior, good eye contact, and a cooperative attitude.  Tr. 30, 937, 941.  Plaintiff was alert with speech and thought process within normal limits.  She reported no hallucinations, had full insight and good judgment, and was both oriented and attentive during the interview.  Tr. 30, 938.

The ALJ found additional inconsistencies between these objective findings and the alleged severity of Plaintiff's mental symptoms.  Tr. 30.  While Plaintiff

testified at the hearing that she did not believe her medications had worked, the record as a whole shows that Plaintiff had regularly indicated that her mental symptoms had improved through use of medication. Tr. 30, 381 (Ex. B7F). In April 2016, Plaintiff reported that in the context of her history of depression and anxiety, she has overall improved and her panic attacks have decreased in frequency through medication. Tr. 30, 933, 938 (Ex. B26F). The ALJ determined that the record also indicated that abnormalities in her mental function had been caused, at least in part, by situational stressors or contemporaneous methamphetamine use. Tr. 30, 885-86, 893-94, 901 (Ex. B25F), 932 (Ex. B26F).

Additionally, the ALJ found that Plaintiff's activities were inconsistent with the alleged severity of her mental symptoms, as the activities demonstrated overall intact social and cognitive functioning. Tr. 31. Plaintiff testified that she was staying with her daughter and would go to the park with her grandchildren, showing that she maintained intact relationships with family members. *Id.* The overall record also shows that she maintained friendships with others. Tr. 31, 942, 947 (Ex. B26F), 996, 999 (Ex. B28F). At the hearing, Plaintiff reported that she went to the local casino with some friends a few days earlier for her birthday. Tr. 31. As to cognitive functioning, she was able to wash dishes, prepare her own meals, and take the bus. *Id.* She also keeps a journal as recommended by her

behavioral health counselor and she spends time playing with her dog and watching television.  Tr. 31, 932, 939 (Ex. B26F).

The ALJ determined that the evidence discussed above indicated that Plaintiff had maintained largely intact social and cognitive functioning.  Tr. 31. The ALJ still accounted for Plaintiff's subjective complaints to some extent, the nature of her severe mental impairments, and the evidence above by finding an RFC for simple, repetitive, routine work instructions and work tasks.  The ALJ also found Plaintiff could have only brief, superficial contact with the general public and limited co-worker and supervisor contact.  *Id.*  The ALJ determined a work setting with little or no changes and independent decision-making was appropriate.  *Id.*

This Court finds that the ALJ gave specific, clear, and convincing reasons for rejecting Plaintiff's credibility in regards to her physical and mental symptoms. The ALJ considered the inconsistencies in Plaintiff's testimony and her conduct, including how her daily activities disproved the alleged severity of her symptoms. Tr. 28, 31.  The ALJ also extensively considered objective medical evidence, including Plaintiff's physical and mental assessments.  While Plaintiff may conclude that the ALJ's assessment was not based upon clear or convincing evidence, this bare assertion does not indicate harmful error when the ALJ extensively considered the medical records, physical and mental examinations, and

Plaintiff's testimony and activities. The Court also emphasizes that the ALJ still accounted for some of Plaintiff's alleged severity by only finding a physical and mental RFC for a limited range of light work. Tr. 28, 31. Accordingly, the Court finds that the ALJ properly discredited Plaintiff's testimony with clear and convincing reasons.

### 2. RFC, Vocational Expert, and Past Relevant Work

### A. Dr. Rozenfeld

Plaintiff argues that her psychological conditions pose limitations affecting her employability, but the ALJ ignored these conditions when he found she was capable of a restricted range of light work. ECF No. 13 at 12. Plaintiff concedes that "[t]he ALJ properly addressed the effects of her psychological impairments in terms of her ability to maintain attendance and work effectively during an eight hour day." *Id.* Yet, Plaintiff contends that the RFC is deficient and does not constitute a complete assessment "which should be allowed to thwart Plaintiff's claim." *Id.* at 12-13.

Plaintiff asserts that the hypothetical posed by the ALJ to the VE was incomplete, and thus the ALJ improperly found that Plaintiff could perform her past relevant work as a motel housekeeper at step four. *Id.* at 13. Plaintiff states that the impartial psychologist medical expert Ellen Rozenfeld, Psy.D. rated her as having a moderate degree of limitation in terms of concentration, persistence, and

pace. *Id.* at 14. Plaintiff emphasizes that Dr. Rozenfeld opined that she would need a work environment that would include simple, routine, and repetitive tasks which were incorporated into the ALJ's RFC assessment. *Id.* Yet, Plaintiff argues that the RFC assessment did not include any factors addressing Plaintiff's ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. *Id.* The assessment also did not include completing a normal work week and work day without interruption from psychologically based symptoms, which Plaintiff argues are critical factors for consideration at steps four and five. *Id.* Plaintiff also insists that these factors should have been included in the hypothetical question posed to the VE. *Id.* Plaintiff states that these limitations are supported by Dr. Rozenfeld's opinions. *Id.* The Commissioner counters that Plaintiff's argument neglects the record because Dr. Rozenfeld did accommodate all of Plaintiff's credible limitations. ECF No. 14 at 9-10.

The ALJ considered the opinion evidence of Dr. Rozenfeld who testified that Plaintiff had the mental limitations in the RFC assessment. Tr. 31. The ALJ gave "great weight to the detailed opinion of Dr. Rozenfeld as she had the large majority of the entire longitudinal record evidence to review, whereas the treating sources, examiners, and other reviewers in this case did not." *Id.* The ALJ also noted that Dr. Rozenfeld testified at the hearing and was subject to cross-examination. *Id.* At the hearing, Dr. Rozenfeld testified that she did not have any

file evidence that would suggest Plaintiff would have difficulty maintaining regular

attendance or being punctual. Tr. 74. She also testified that based on Plaintiff's

performance on the mental status exams, Dr. Rozenfeld did not anticipate a

problem with handling quotas in a work setting. Tr. 75.

The Court emphasizes that Plaintiff admits the ALJ properly considered the

effects of her psychological impairments in terms of her ability to maintain

attendance and work effectively during a work day. ECF No. 13 at 12. The Court

is then not persuaded by Plaintiff's argument that the RFC did not include factors

regarding completion of a normal work week or ability to maintain a schedule. *Id.*

Plaintiff concedes that Dr. Rozenfeld's opinion was incorporated into the RFC

assessment. *Id.* The ALJ gave great weight to Dr. Rozenfeld's testimony, which

included her findings that Plaintiff would likely not have difficulty maintaining

regular attendance or handling quotas in a work setting. Tr. 74-75. The Court

finds that the RFC assessment included the critical factors necessary for the ALJ to

determine that Plaintiff is not disabled.

Additionally, the Court notes that Plaintiff bears the burden at step four.

*Bray*, 554 F.3d at 1222. Plaintiff fails to establish that the ALJ did not properly

consider the opinion testimony of Dr. Rozenfeld in establishing the RFC and

posing hypothetical questions to the VE. Plaintiff also does not show that she is

limited in performing a normal workweek or adhering to a schedule. Dr.

Rozenfeld found that Plaintiff was not limited in this respect, and Plaintiff fails to meet her burden that such limitations exist to make the RFC and hypothetical question to the VE deficient. Accordingly, the Court finds that the RFC and hypothetical to the VE were adequate considering Dr. Rozenfeld's opinion.

**B. Dr. Arnold**

Plaintiff states that the alleged limitations discussed above are also supported by the opinion of evidence of examining psychologist John Arnold, Ph.D. ECF No. 13 at 14; Tr. 837-39 (Ex. B22F). The Commissioner responds that Plaintiff does not challenge any of the ALJ's actual reasoning with regard to the assessment of Dr. Arnold's opinion, and thus her minimal assertions cannot prevail on a challenge to that assessment. ECF No. 14 at 7. The Commissioner still addresses the merits of Plaintiff's argument, stating that the ALJ discounted the marked limitations that Dr. Arnold assessed for multiple valid reasons. *Id.* The Commissioner insists that the ALJ found that Dr. Arnold's marked assessment was contradicted by the contemporaneous mental exams, and objective findings showing largely intact social and cognitive functioning. ECF No. 14 at 8; Tr. 32. The Commissioner asserts that because Dr. Arnold's assessment of marked limitations was contradicted by the objective record, the ALJ reasonably concluded that it was based on Plaintiff's non-credible subjective reports. ECF No. 14 at 8. The Commissioner argues that the ALJ also discounted Dr. Arnold's assessment

because his opinion was brief, conclusory, and unsupported by clinical findings. ECF No. 14 at 8; Tr. 32.

The ALJ accorded significant weight to Dr. Arnold's opinion that Plaintiff had no impairment or only mild difficulties in understanding, remembering, and persisting in tasks; moderate difficulties in other work-related activities; and a GAF score consistent with moderate difficulties in functioning. Tr. 32, 383 (Ex. B7F). The ALJ found that these aspects of Dr. Arnold's opinion were consistent with the results of the mental status examinations. Tr. 32. The ALJ gave little weight to Dr. Arnold's opinion of marked limitations in such areas as communicating, performing effectively, and maintaining appropriate behavior in a work setting. Tr. 32, 383. The ALJ found that "the results of contemporaneous mental status examinations …, in addition to findings that the claimant had mostly logical and progressive thought process and content, as well as open/cooperative attitude and behavior, show that Dr. Arnold's opinions appear to be substantially based on the claimant's self-reported symptoms and complaints." Tr. 32. The ALJ also determined that Dr. Arnold's opinions were mitigated by the fact that he did not have a treating relationship with Plaintiff and his evaluation form was completed by checking boxes with few objective findings in support of the degree of limitations opined. Tr. 32.

The Court finds that the ALJ properly rejected the limitations described by Dr. Arnold. The ALJ gave clear and convincing reasons supported by substantial evidence for rejecting some of Dr. Arnold's opinion. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). The ALJ found that Dr. Arnold's opinion of marked limitations were contradicted by contemporaneous mental status examinations and were a product of Plaintiff's self-reported symptoms. Tr. 32. Dr. Arnold is also not a treating physician and his opinion carries less weight as an examining physician. Tr. 32; *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001).

Accordingly, the Court finds that the ALJ reasonably rejected the limitations described by Dr. Arnold and properly considered the accommodations described by Dr. Rozenfeld. The Court then agrees with the Commissioner that the ALJ was not required to include any additional limitations in the RFC assessment or the hypothetical question to the VE. *See* ECF No. 14 at 10. The Court determines that the ALJ properly found that Plaintiff could perform her past relevant work at step four and other significant number of jobs in the national economy based on the RFC and questions to the VE.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 13) is **DENIED**.

2.  Defendant's Motion for Summary Judgment (ECF No. 14) is

**GRANTED**.

The District Court Executive is directed to enter this Order, enter

**JUDGMENT** for Defendant, furnish copies to counsel, and **CLOSE** the file.

DATED July 6, 2018.



THOMAS O. RICE
Chief United States District Judge